**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PARIS L. JAMES,** | : | |
| **Plaintiff** | : | No. 1:21-cv-01069 |
| | : | |
| **v.** | : | (Judge Kane) |
| | : | |
| **JOHN WETZEL, <u>et al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Presently before the Court is Defendants' motion to dismiss the complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 14.) Defendants' motion has been briefed by the parties and is ripe for the Court's disposition. For the reasons set forth below, the Court will grant Defendants' motion to dismiss.

**I.      BACKGROUND**

Plaintiff Paris L. James ("Plaintiff"), who is proceeding <u>pro se</u> and <u>in forma pauperis</u>, is currently incarcerated at State Correctional Institution Albion ("SCI Albion") in Albion, Pennsylvania. He commenced the above-captioned action on June 17, 2021, by filing a complaint pursuant to 42 U.S.C. § 1983, concerning events that allegedly occurred while he was incarcerated at SCI Coal Township in Coal Township, Pennsylvania. (Doc. No. 1-1 ¶ 3.) He names the following individuals as Defendants: John Wetzel ("Wetzel"), the Secretary of the Pennsylvania Department of Corrections ("DOC"); Thomas McGinley ("McGinley"), the Superintendent at SCI Coal Township; William Nicklow ("Nicklow"), the Deputy Superintendent at SCI Coal Township; Sean Drucis ("Drucis"), a Security Lieutenant at SCI Coal Township; Christopher Belles ("Belles"), another Security Lieutenant at SCI Coal Township; John Doe, a Security Captain at SCI Coal Township; and four (4) John Doe

corrections officers at SCI Coal Township, which Plaintiff refers to in his complaint as John Doe #1, John Doe #2, John Doe #3, and John Doe #4.[1]  (Doc. Nos. 1 at 2-5, 1-1 at 2-3.)

Plaintiff asserts a number of allegations against these Defendants, regarding events that allegedly occurred in July and August of 2019.  (Doc. Nos. 1, 1-1.)  In accordance with the legal standard set forth below, the Court accepts these allegations as true and draws all reasonable inferences therefrom in the light most favorable to Plaintiff.  See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).  In addition, the Court heeds the long-standing principle that pro se documents are "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Thus, Plaintiff's pro se complaint, "however inartfully pleaded," will be held to "less stringent standards than formal pleadings drafted by lawyers[.]"  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

On the morning of July 17, 2019, Plaintiff was in his cell preparing various legal documents for an upcoming visit to the law library.  (Doc. No. 1-1 ¶ 15.)  Shortly before he was to receive his pass to the law library, "housing staff" informed him that his time there had been cancelled.  (Id.)  The four (4) John Doe corrections officers subsequently appeared at Plaintiff's cell, at or about 8:45 a.m., and directed Plaintiff to submit to a strip search.  (Id. ¶ 16.)  Plaintiff complied and informed the officers that he had been in the process of compiling various legal documents for mailing, but that his time in the law library had been cancelled.  (Id. ¶¶ 16-18.)  Plaintiff alleges that John Doe Officers #2 and #3 began laughing at him and instructed him to submit to handcuffs, which Plaintiff did.  (Id. ¶ 18.)  The handcuffs were "unnecessarily applied excessively tight[.]"  (Id.)

---

[1] The Court has taken the spelling of Defendants' names from their filings.  The Court will direct the Clerk of Court to amend the docket to reflect such spelling.

The officers then removed Plaintiff from his cell and placed him in a strip cage, where he was "ordered to comply with strip search[ ] procedures for a second time[.]" (Id. ¶ 19.) Plaintiff complied and again informed the officers that his various documents pertained to his pending civil actions. (Id.) In response, John Doe #1 stated that they would "give [Plaintiff] something to complain about." (Id. ¶ 20.) Plaintiff interpreted that statement to "suggest [that he] would be physically harmed or unlawfully placed in the [Restricted Housing Unit ("RHU")], but knew for sure something bad was going to happen" because he had previously been the target of adverse action in retaliation for filing grievances and lawsuits. (Id.) Plaintiff maintains, for example, that since filing a previous lawsuit, Officer Tripp, who had been named as a defendant in that prior lawsuit, retaliated against Plaintiff by directing other corrections officers to deprive Plaintiff of "equal protection of programs [and] privileges[,]" including denying him the inmate phone system, obstructing his access to the courts, and failing to act on his complaints.[2] (Id. ¶ 21.)

After the second strip search was complete, the four (4) John Doe corrections officers handcuffed Plaintiff. (Id. ¶ 22.) The handcuffs were "excessively tight" and caused Plaintiff pain, but the officers refused to loosen them. (Id.) The officers took Plaintiff back to his housing unit, but instead of taking him to his cell "to observe the search[,]" they locked him in the bathroom for half an hour. (Id.) The bathroom was extremely hot due to a lack of air

---

[2] Although Plaintiff did not name Officer Tripp in either the caption of his complaint or in his list of Defendants (Doc. Nos. 1 at 2-5; 1-1 at 1-3), Plaintiff asserts causes of action against, and seeks relief from, Officer Tripp (Doc. No. 1-1 at 11-18). Plaintiff's failure to name Officer Tripp in the caption of his complaint runs afoul of Rule 10(a) of the Federal Rules of Civil Procedure, which provides that the "title of the complaint must name all the parties[.]" See Fed. R. Civ. P. 10(a). In light of Plaintiff's pro se status, however, the Court presumes that he intended to name Officer Tripp as a Defendant in this action. Because Plaintiff will be granted leave to file an amended complaint, he will have the opportunity to correct this deficiency in his amended pleading, should he file one.

circulation, which caused Plaintiff to experience difficulty breathing because of his asthma.  (Id.)
Plaintiff's requests for medical treatment, including being provided his inhaler, were ignored.
(Id.)  His request for the handcuffs to be loosened so that he could use the bathroom was also
ignored.  (Id.)

Around 11:30 a.m., the four (4) John Doe officers left Plaintiff's cell with multiple boxes
and bags of paper.  (Id. ¶ 23.)  Plaintiff was then released from the bathroom, at which point he
observed the "complete destruction of his cell[.]"  (Id. (alleging that his "documents were thrown
everywhere[,]" that "filings were visually missing[,]" and that documents were "ripped up").)
Plaintiff asked the officers to use the video camera to record the condition of his cell and to allow
him to examine the boxes of paperwork.  (Id.)  The officers refused and told Plaintiff that they
would take him to the RHU if he continued to complain.  (Id.)

The next morning, Plaintiff was walking to breakfast, when he saw Defendant Drucis.
(Id. ¶ 24.)  Plaintiff asked Defendant Drucis to go to his cell, which he did, and Plaintiff "showed
him the aftermath of the [officers'] retaliatory destruction."  (Id.)  Plaintiff asked Defendant
Drucis to "video record the evidence," but Defendant Drucis refused.  (Id. ¶ 25.)  Plaintiff
returned to breakfast and submitted a grievance about the search.  (Id.)  Plaintiff also submitted a
request slip to Defendant McGinley, requesting that he order video footage of Plaintiff's cell, but
"nothing was done."  (Id.)  The following day, on July 19, 2019, Defendant Nicklow was
conducting rounds on the housing unit, when Plaintiff advised him about what had happened.
(Id.)  Plaintiff again requested video footage of his cell, but Defendant Nicklow denied that
request.  (Id.)

Plaintiff contends that Defendants' "retaliatory misconduct" forced him to settle a
previously filed lawsuit, obstructed him from timely seeking injunctive relief, and prevented him

from properly exhausting a retaliatory misconduct issued by Defendant Belles, as well as various grievances.  (Id. ¶ 26.)  In addition, Plaintiff maintains that he "acted reasonably [and] diligently[,]" that he sought "lawful relief through exhaustion[,]" and that he corresponded with Defendants Wetzel and McGinley to make them aware of these issues.  (Id. ¶ 27.)  Plaintiff also maintains that the cell search on July 17, 2019, was the culmination of a series of retaliatory actions, including one instance in which Plaintiff's "out of state visit" on or about July 6, 2019, was terminated early after Plaintiff had "spoke[n] up about the inability to . . . use the bathroom coupled by [the] fact [that he] had actively been seeking legal representation[.]"  (Id. ¶ 28.)

Based upon these allegations, Plaintiff asserts violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  (Id. ¶¶ 30-47.)  With respect to the moving Defendants, Plaintiff seeks to hold them liable under the First and Eighth Amendments for: (1) being indifferent to the inhumane conditions of his confinement, including the July 17, 2019 cell search; (2) failing to supervise or train individuals; (3) retaliating against him for filing grievances and lawsuits; (4) obstructing his access to the courts; and (5) failing to act once he notified them of the destruction of his cell after the search.  (Id. ¶¶ 30-37.)  Plaintiff's remaining claims are asserted against the John Doe Defendants.  (Id. ¶¶ 38-47.)  As for relief, Plaintiff seeks damages, as well as declaratory and injunctive relief.  (Id. ¶¶ 48-91.)

In response to Plaintiff's complaint, the moving Defendants filed a motion to dismiss, along with a brief in support, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. Nos. 14, 15.)  They argue that the complaint fails to state a claim upon which relief can granted because Plaintiff has not sufficiently alleged their personal involvement in the asserted constitutional violations.  (Id.)  Plaintiff has responded to their motion by filing a brief in

opposition.  (Doc. Nos. 22, 22-1.)  He argues that he has sufficiently alleged the personal involvement of each of these Defendants.  (Id.)

Consistent with the legal standard set forth below, the Court will grant the instant motion and dismiss the claims that Plaintiff has asserted against the moving Defendants.  The Court will also afford Plaintiff the opportunity to file an amended complaint.

## II.   LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).  When considering a party's motion to dismiss under Rule 12(b)(6), a court must "'accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].'"  See Kedra, 876 F.3d at 434 (quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 228, 230 (3d Cir. 2008)).   In addition, a court "must consider the complaint in its entirety, and determine whether the complaint as a whole contains sufficient factual matter to state a facially plausible claim[.]"  See id. at 441 (citation, and internal citation and quotation marks omitted).

Under this plausibility standard, "a complaint must do more than allege [a] plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (citation and internal quotation marks omitted).  However, while "[f]actual allegations must be enough to raise a right to relief above the speculative level, [courts] demand only enough facts to state a claim to relief that is plausible on its face and do not require heightened fact pleading of specifics[.]"  See Kedra, 876 F.3d at 441 (citation and internal quotation marks omitted).

**III.   DISCUSSION**

Plaintiff has brought this civil rights action under 42 U.S.C. § 1983 for violations of his

constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.  (Doc.

Nos. 1, 1-1.)  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

Id.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of

state law, deprives another individual of any rights, privileges, or immunities secured by the

Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d

141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive

rights but instead provides a remedy for the violation of a federal constitutional or statutory

right." See id. (citation omitted).  For a plaintiff to state a claim under Section 1983, he must

allege "a deprivation of a federally protected right and that this deprivation was committed by [a

person] acting under color of state law." See Woloszyn v. County of Lawrence, 396 F.3d 314,

319 (3d Cir. 2005) (citation and internal quotation marks omitted).

Particularly relevant here is that, in order for a Section 1983 claim to survive a

defendant's motion to dismiss, the plaintiff must sufficiently allege that the defendant was

personally involved in the act or acts that the plaintiff claims violated his federally protected

rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes

sufficient allegations of a defendant's personal involvement by describing the defendant's

participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga

v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207);

Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, in pursuing any Section 1983 claim against prison officials, a plaintiff may not rely solely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

Here, the moving Defendants are supervisory officials, consisting of the Secretary of the DOC (Defendant Wetzel), the Superintendent and Deputy Superintendent of SCI Coal Township (Defendants McGinley and Nicklow, respectively), and two Security Lieutenants at SCI Coal Township (Defendants Drucis and Belles).  (Doc. Nos. 1, 1-1.)  The United States Court of Appeals for the Third Circuit has explained, in the context of Section 1983, that "'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'"  See Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016) (quoting Santiago, 629 F.3d at 129 n.5).

The moving Defendants argue, essentially, that Plaintiff's complaint has not met the requisite standard in the Third Circuit to hold them personally liable under a theory of supervisory liability.  (Doc. No. 15 at 7-9.)  The Court agrees.  Initially, the Court finds that there are no allegations in the complaint upon which the inference can be drawn that these Defendants

established and maintained a policy, practice, or custom that caused Plaintiff's asserted constitutional harms.  (Doc. Nos. 1, 1-1.)  Plaintiff, who has not pointed to any specific policy, has at most alleged that there were ongoing and "collective" retaliatory "tactics" employed by Defendants.  (Doc. No. 1-1 ¶ 28.)  This is insufficient to show that these Defendants had a practice or custom that directly caused Plaintiff's constitutional harms.  As set forth above, it is not enough for Plaintiff to claim that he is entitled to relief; he must show the Court his entitlement with facts in the complaint.  See Fowler, 578 F.3d at 211; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (explaining that, in ruling on a motion to dismiss, a court is not required to accept as true legal conclusions that are framed as factual allegations (citation omitted)).

In addition, the Court finds that there are no allegations in the complaint upon which the inference can be drawn that these Defendants participated in violating Plaintiff's federally protected rights, directed their subordinates to violate those rights or, as supervisors, had knowledge of and acquiesced in their subordinates' violations.  (Doc. Nos. 1, 1-1.)  Quite simply, Plaintiff asserts no facts that Defendants themselves participated in the cell search and related conduct, directed the John Doe corrections officers to engage in the conduct, or had any contemporaneous knowledge and acceptance of, or submission to, the conduct.  In fact, the complaint alleges that the earliest that any of the moving Defendants became aware of the alleged constitutional harm was not until the next morning.  (Doc. No. 1-1 ¶ 24 (alleging that, somewhere between 6:30 and 7:00 a.m. on July 18, 2019, one day after the cell search and related conduct, Plaintiff saw Defendant Drucis and requested that Defendant Drucis go to Plaintiff's cell to observe the damage caused by the John Doe corrections officers), ¶ 25 (alleging that, on July 19, 2021, two (2) days after the cell search and related conduct, Plaintiff told

Defendant Nicklow of what had allegedly occurred while Defendant Nicklow was conducting rounds on the housing unit), ¶¶ 25, 27 (alleging that Plaintiff subsequently submitted a request slip to Defendant McGinley and corresponded with Defendant Wetzel about the alleged constitutional harms).

Accordingly, for all of these reasons, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted against Defendants Wetzel, McGinley, Nicklow, Drucis, and Belles for failure to sufficiently allege their personal involvement in the asserted constitutional violations. The Court will, therefore, grant the currently pending motion and dismiss Plaintiff's claims against these moving Defendants.

The final issue before the Court is whether Plaintiff should be granted leave to amend his complaint in order to attempt to cure the deficiencies identified above. In light of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). The Court may deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, prejudice to the opposing party, or futility of the amendment. See id. "[A]n amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citation and internal quotation marks omitted).

Based on the foregoing, the Court cannot conclude that it would be futile or prejudicial to permit Plaintiff to file an amended complaint against the moving Defendants in order to attempt

to cure the deficiencies identified above.  Plaintiff is advised that, if he elects to file an amended complaint, it must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  In addition, the amended complaint must set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Should Plaintiff elect to file an amended complaint, he must re-plead every cause of action in the amended complaint because the amended complaint will supersede the original complaint.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss filed by Defendants Wetzel, McGinley, Nicklow, Drucis, and Belles  (Doc. No. 14) and dismiss the claims Plaintiff has asserted against them.  The Court will also grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above.  An appropriate Order follows.