IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PARIS L. JAMES,                          :
     **Plaintiff**                    :        No. 1:21-cv-01069
                               :
         **v.**                      :        **(Judge Kane)**
                               :
JOHN WETZEL, <u>et al.</u>,               :
     **Defendants**                  :

## <u>MEMORANDUM</u>

Before the Court is a motion to partially dismiss the amended complaint filed by some of the named Defendants in the above-captioned action. (Doc. No. 40.) Also before the Court are Plaintiff's motions for a preliminary injunction, to show cause regarding his motion for a preliminary injunction, and for the appointment of counsel. (Doc. Nos. 46, 49, 51.) For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion to dismiss and deny Plaintiff's various motions.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff Paris L. James ("Plaintiff"), an experienced litigant who is proceeding pro se and in forma pauperis, is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). He commenced the above-captioned action on June 17, 2021, by filing a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging violations of his constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments while incarcerated at SCI Coal Township ("SCI Coal Township") in Coal Township, Pennsylvania. (Doc. No. 1.) Plaintiff's complaint named the following individuals as Defendants: John Wetzel ("Wetzel"), the former Secretary of the DOC; Thomas McGinley ("McGinley"), the Superintendent at SCI Coal Township; William Nicklow ("Nicklow"), the Deputy

Superintendent at SCI Coal Township; Sean Drucis ("Drucis"), a Security Lieutenant at SCI

Coal Township; Christopher Belles ("Belles"), another Security Lieutenant at SCI Coal

Township; John Doe, a Security Captain at SCI Coal Township; and four (4) John Doe

Corrections Officers at SCI Coal Township, which Plaintiff referred to in his complaint as John

Doe #1, John Doe #2, John Doe #3, and John Doe #4.  (Doc. Nos. 1 at 2–5; 1-1 at 2–3.)

     In response to Plaintiff's complaint, Defendants Wetzel, McGinley, Nicklow, Drucis, and

Belles filed a motion to dismiss, along with a supporting brief, pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  (Doc. Nos. 14, 15.)   They argued that the complaint failed to

state a claim upon which relief could be granted because Plaintiff did not allege their personal

involvement in the asserted constitutional violations.  (Id.)  The Court agreed, and, on June 24,

2022, the Court issued a Memorandum and Order granting their motion to dismiss.  (Doc. Nos.

24, 25.)  Plaintiff was, however, afforded leave to file an amended complaint.  (Id.)

     Following several extensions of time (Doc. Nos. 29, 31, 33), Plaintiff filed his amended

complaint on February 27, 2023, against nineteen (19) Defendants.  He names the original

Defendants (i.e., Wetzel, McGinley, Nicklow, Drucis, Belles, the John Doe Security Captain,

and the four (4) John Doe Corrections Officers), as well as the following newly named

Defendants: Richard Little ("Little"), the former Acting Secretary of the DOC; Chief Counsel,

the DOC's "top legal advisor;" D. Varner ("Varner"), the DOC's Chief Grievance Officer; T.

Kelley ("Kelley"), the Superintendent's Assistant at SCI Coal Township; Keith Tripp ("Tripp"),

the Major of Unit Management at SCI Coal Township; Greene, a Sergeant at SCI Coal

Township; Danaoply, a corrections officer at SCI Coal Township; Noel, the school principal at

SCI Coal Township; and Bauer, the law librarian at SCI Coal Township.  (Doc. No. 34 at 1, 2–

4.)

After receiving the amended complaint, the Court directed the Clerk of Court to serve, inter alia, a copy of the amended complaint on the newly named Defendants.  (Doc. No. 35.)  In the interests of efficient administrative judicial economy, the Court requested that Defendants waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  (Id.)  Shortly thereafter, counsel for the original Defendants entered an appearance on behalf of some of the newly named Defendants (i.e., Little, Kelley, Tripp, Varner, Noel, Danaoply, Greene, and Tim Holmes ("Holmes"), who has been identified as Chief Counsel).  (Doc. No. 37.)  Counsel did not enter an appearance on behalf of Bauer, the John Doe Security Captain, or the John Doe Corrections Officers.  (Doc. No. 41 at 1 n.1.)

Subsequently, on July 5, 2023, Defendants filed a motion to partially dismiss the amended complaint, along with a supporting brief.  (Doc. Nos. 40, 41.)  Following two (2) extensions of time (Doc. Nos. 45, 52), Plaintiff filed his brief in opposition on February 6, 2024 (Doc. No. 53.)  Plaintiff has also filed a motion for a temporary restraining order and supporting brief (Doc. Nos. 46, 47), a motion to show cause concerning his motion for a temporary restraining order (Doc. No. 49), and a motion seeking the appointment of counsel (Doc. No. 51). Defendants have filed a brief in opposition to Plaintiff's motion for a temporary restraining order.  (Doc. No. 48.)

### B.    Factual Background

Plaintiff's amended complaint, which names numerous Defendants, is lengthy and touches upon this civil action as well as other civil actions that he has previously filed in this District and the Western District of Pennsylvania ("Western District").  See, e.g., (Doc. No. 34 at 5, 7, 10, 12, 14, 17).  It includes not only a significant number of new defendants, but a significant number of new allegations, most of which do not specify when or where the asserted

wrongdoing by Defendants occurred.  <u>See, e.g.</u>, (<u>id.</u> at 6, 7, 12, 14, 15).  Finally, Plaintiff's amended complaint includes at least eleven (11) causes of action, each of which is interspersed with both federal and state causes of action.  <u>See, e.g.</u>, (<u>id.</u> at 19–22).  As a result, Plaintiff's amended complaint lacks clarity and, at times, is difficult to follow.  That said, the Court has done its best to recount Plaintiff's allegations here.

Plaintiff's amended complaint begins by explaining that he was incarcerated at SCI Coal Township from October 11, 2012, until, approximately, September 9, 2019, when he was transferred to SCI Fayette according to a settlement agreement in "Civil Action No. 14-69 <u>James v. Sauers</u>[.]"  (<u>Id.</u> at 5); <u>see</u> <u>James v. Sauers</u>, No. 1:14-cv-00069 (W.D. Pa. <u>filed</u> March 3, 2014) ("<u>James v. Sauers</u>").  Upon his arrival to SCI Coal Township, he was subject to, <u>inter alia</u>, "inhumane conditions of confinement" and the "deni[al] [of] medical care[.]"  (<u>Id.</u>)  "[T]hose claims" were exhausted, litigated, and resolved in "1:14-CV-1951, 18-1722, <u>James v. Varano</u>[.]" (<u>Id.</u>); <u>see</u> <u>James v. Varano</u>, No. 1:14-cv-01951 (M.D. Pa. <u>filed</u> Oct. 8, 2014) ("<u>James v. Varano</u>").

In seeming connection with <u>James v. Varano</u>, Plaintiff asserts that he suffered retaliation in response to him filing grievances and sending correspondence to Defendant Wetzel wherein he sought a transfer and initiation of a "separation" against numerous DOC corrections staff, including Defendant Tripp.  (Doc. No. 34 at 5.)  Plaintiff also asserts that he was subject to "the most extreme and adverse conditions as penalty" for his refusal to "cease litigation" against, presumably, the defendants in <u>James v. Varano</u>.  (<u>Id.</u>)  Despite seeking redress in "2:21-CV-00786-CRE <u>James v. Wetzel</u>" for a breach of the "settlement agreement" and "denial of access to courts[,]" and despite his "current[ ] suffering[,]" Defendant Little has failed to take any action.

(Id. at 5); see also James v. Wetzel, No. 2:21-cv-00786 (W.D. Pa. filed June 16, 2021) ("James v. Wetzel").[1]

Plaintiff's amended complaint then delves into various allegations concerning how he spoke with numerous individuals within the DOC about "the conditions" of his confinement and the denial of his access to the Courts. See, e.g., (id. at 5–6). Specifically, he asserts that Defendants Nicklow, Drucis, McGinley, and Tripp "abused their official office as [c]orrections [o]fficers" and that Defendants McGinley, Tripp, Kelley, Varner, and Biscoe (a non-party) were deliberately indifferent and took "no steps to cure the conditions." (Id. at 6 (explaining that he "spoke directly with these Defendants[,] sent DC-135A inmate request [forms]" or "forwarded protected correspondence" to them, or that these individuals "reviewed grievance appeals at the time when the conditions remained cruel and unusual").)

Plaintiff further asserts that, despite requesting "intervention[,]" he "received none[,]" and that, instead, Defendants Tripp and McGinley "provided direction to their subordinates" to violate his right to access the courts, for "program eligibility[,]" and "refuge[.]" (Id.) In addition, Defendant Varner, via the DOC's administrative remedy process, "deliberately ignored" the alleged violations set forth in Plaintiff's grievances, allowing him to continue to suffer from wrongdoing, as well as the spoliation of evidence. (Id. at 7.) And, Plaintiff also suggests that, because he had been exhausting his administrative remedies with respect to his various civil actions, Defendants Wetzel, Little, Varner, Holmes, McGinley, and Tripp were

---

[1] According to the dockets in James v. Wetzel and this action, Plaintiff signed his pro se complaints on the same date (i.e., June 9, 2021). Compare James v. Wetzel, No. 2:21-cv-00786 (W.D. Pa. June 16, 2021), ECF No. 1-2 with James v. Wetzel, No. 1:21-cv-01069 (M.D. Pa. June 17, 2021), ECF No. 1-1.

5

"each aware but failed to act" or were "beingindifferent [sic] to [his] right to be free from inhumane mistreatment."  (Id. at 8–9.)

In connection with these allegations, Plaintiff states that he was suffering under a "campaign of retaliation and abuse[.]"  (Id.)  In support, he appears to set forth the following examples of such "retaliation and abuse:" on an unspecified date, but sometime after he filed his amended complaint in James v. Varano, Defendants Tripp and McGinley denied him the ability to communicate with his family, despite his compliance with the phone call "sign-up procedures" (id. at 7–8); on an unspecified date, but after he filed an unidentified grievance, Defendants Tripp and McGinley "conspired and issued a false retaliatory misconduct by [Defendant] Belles") (id. at 8); and, on unspecified dates and times, Defendants Bauer and Noel "repeatedly denied" Plaintiff access to the institution's law library (id. at 10–11).

From there, Plaintiff's amended complaint focuses on what appears to be the crux of his pleading—incidents that allegedly occurred on July 6, 2019, and during the two (2) weeks that followed.  On July 6, 2019, Plaintiff alleges that he was "denied . . . the basic function of using the bathroom during the course of his out of state visit."  (Id. at 9.)  He "waited nearly 24mins to gain access to the bathroom[,]" and he advised "John Doe visiting [o]fficer that [he] intended to submit[ ] a grievance about the exaggerated [and] unreasonable delays[.]"  (Id.)  Plaintiff explains that this "out of state visitor" was one of the people "enlisted" to post on the internet about Plaintiff's complaints of being denied "humane conditions of confinement[.]"  (Id. at 9–10.)

Plaintiff alleges that, less than two (2) weeks later, on the morning of July 17, 2019, he was waiting in his cell to attend the law library so that he could staple, package, and mail a habeas corpus petition concerning his underlying criminal conviction.  (Id. at 8, 10.)  However,

at about 8:45 a.m., the four (4) John Doe Corrections Officers arrived at his cell to conduct an "investigative cell search[,]" during which they ordered Plaintiff to submit to a strip search.  (Id. at 10.)  Although Plaintiff complied with their directives, he questioned why he was being subjected to an investigative cell search, and he advised the officers that he had "documentation" in his cell for his active civil and criminal cases.  (Id.); see also (id. at 11 (explaining that he "repeatedly directed" their attention to "specific piles" concerning his Section 1983 actions against DOC officials)).  The four (4) John Doe Corrections Officers proceeded by verbally harassing Plaintiff and "unnecessarily appl[ying] excessively . . . tight handcuffs[.]"  (Id.)

Plaintiff was then led out of his cell and taken to the housing unit's foyer, where there is a sergeant's office, and he was subjected to a second strip search, which he asserts was intrusive, unnecessary, and humiliating.  (Id. at 12.)  During this second search, Plaintiff reiterated to the four (4) John Doe Corrections Officers that his legal documentation was organized in piles in his cell.  (Id.)  "Essential to [his] notification to" the officers was his "itemized records" pertaining to trial preparations for James v. Sauers.  (Id.)  In support, Plaintiff alleges that Defendants McGinley, Tripp, Noel, and Bauer were "well aware" of that trial (id. at 13), and Plaintiff seems to suggest that the four (4) John Doe Corrections Officers had been directed to subject him to the "retaliatory" and "harassing" search in an effort to cause "governmental interference" and to have Plaintiff "miss" or "file defective civil and criminal petitions" (id. at 13–14).

In addition, Plaintiff asserts that his wrist and arms were in pain because of the tight handcuffs, but he was told, "why don't you resist so we can break your fucking neck."  (Id. at 13.)  In response to this threat, Plaintiff requested to see a captain or a lieutenant.  (Id.)  Plaintiff was denied this request, and the four (4) John Doe Corrections Officers continued to verbally harass him.  (Id. at 14.)  Plaintiff was also denied the ability to observe the search of his cell, and,

instead, the four (4) John Doe Corrections Officers locked him inside of the inmates' bathroom and kept the handcuffs on him.  (<u>Id.</u> at 15.)  After half an hour in the bathroom, which was hot, had no vents, and smelled like urine, Plaintiff informed Defendants Danaoply and Greene that he needed his inhaler and had to go to the bathroom.  (<u>Id.</u> at 16.)  However, Defendants Danaoply and Greene ignored this request and had Plaintiff remain in the bathroom for nearly two (2) hours.  (<u>Id.</u>)

Following the investigative cell search, "Defendants" (presumably the four (4) John Doe Corrections Officers) exited his cell with multiple boxes of documents.  (<u>Id.</u>)  Plaintiff claims that he was not permitted to inventory the contents of those boxes, and he was not issued a property inmate confiscation form for the legal documents that had been confiscated.  (<u>Id.</u>)  Plaintiff further claims that there was "complete destruction" of his cell, as documents were thrown everywhere, some torn up and some missing, including a civil rights complaint "which named Defendants Belles, Tripp, McGinley, Bauer, Noel."  (<u>Id.</u>)  As a result, Plaintiff requested that "video hand held [sic] recordings of the condition of [his] cell" be "produced and preserved[.]"  (<u>Id.</u>)  Plaintiff was told, however, that if he complained, he would be taken to "the RHU right now."  (<u>Id.</u>)  Plaintiff also requested that Defendants Danaoply and Greene write an incident report and document Plaintiff's DC-ADM 001 claim of inmate abuse, but they refused to do so.  (<u>Id.</u>)

Later that evening, Plaintiff completed a DC-ADM 804 inmate grievance concerning the property damage and unlawful confiscation of his legal documentation.  (<u>Id.</u> at 17.)  And, the following morning on July 18, 2019, around 6:30 or 7:00 a.m., Plaintiff spoke with Defendant Drucis and asked him to videotape the "after math [sic] of the retaliatory search" by the four (4) John Doe Corrections Officers.  (<u>Id.</u>)  However, Defendant Drucis refused to do so, stating: "why

would I help you collect evidence[?]"  (Id.)  Defendant Drucis also stated that it was in Plaintiff's "best interest to stop before things [got worse] for [him]."  (Id.)

Plaintiff then went to breakfast, and when he returned, he completed a DC-135A form, requesting Defendant McGinley to order that video footage of his cell be documented and collected, a request which Plaintiff claims went unanswered.  (Id.)  And, the following day, on July 19, 2019, Plaintiff spoke with Defendant Nicklow, who was completing rounds on the housing unit.  (Id.)  Plaintiff asserts that he asked Defendant Nicklow to, inter alia, document the wrongdoing and have Plaintiff's confiscated legal material returned to him.  (Id.)  Plaintiff does not specify, however, how Defendant Nicklow responded to his request.  See (id.).

Finally, Plaintiff alleges that, as a result of the July 17, 2019 investigative cell search and the confiscation of his legal documentation, he was "forced . . . to accept the terms of the settlement agreement [in James v. Sauers], including getting transferred" from SCI Coal Township.  (Id. at 10, 12, 17.)  Plaintiff acknowledges that he was appointed counsel in that case "to assist" with mediation.  (Id. at 17.)

In connection with all of these allegations, Plaintiff's amended complaint asserts eleven (11) causes of action against Defendants based upon violations of his First, Fourth, Eighth, and Fourteenth Amendment rights, as well as violations of the Pennsylvania Constitution, Article 1, §§ 1, 7, 8, 11, 13, and 20.  See (id. at 19–31).  For relief, Plaintiff seeks declaratory relief, compensatory and punitive damages, the costs of this suit, the appointment of counsel, and various forms of injunctive relief, including, the United States Marshals collecting "documentation under seal" that is in Defendants' possession, "enjoin[ing] Defendants Little and their agents[,]" being certified as a class of one, being provided relief "as a mental health inmate under the ADA[,]" and habeas corpus relief.  (Id. at 22–32.)

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any

conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

## III.   DISCUSSION

### A.   Defendants' Motion to Dismiss

#### 1.   Personal Involvement in a Section 1983 Action

As discussed, Plaintiff has brought this action under Section 1983, which provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.

Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted). For a plaintiff to state a claim under Section 1983, he must allege "a deprivation of a federally protected right and that this deprivation was committed by [a person] acting under color of state law." See Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005) (citation and internal quotation marks omitted).

Here, the alleged violations are of the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. See (Doc. No. 34 at 19–31). In their motion to dismiss and supporting brief, Defendants Wetzel, Little, Nicklow, Drucis, Kelley, Varner, and Holmes argue that, as a threshold matter, Plaintiff's amended complaint fails to allege their personal involvement in any of these alleged constitutional violations. (Doc. Nos. 40; 41 at 6–9.) The Court agrees. In addition, the Court adds Defendant John Doe Security Captain to this list of Defendants against whom Plaintiff has failed to allege their personal involvement. Although counsel for the moving Defendants does not represent Defendant John Doe Security Captain, the Court has a continuing statutory obligation to conduct a review of pro se complaints brought by plaintiffs granted leave to proceed in forma pauperis. See 28 U.S.C. § 1915(e)(2)(B).

In a Section 1983 action, a plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights. See Rode v.

12

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, in pursuing any Section 1983 claim, a plaintiff may not rely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

Here, the Court finds that, in Plaintiff's amended complaint, there is an absence of allegations that would give rise to a plausible inference that Defendants Wetzel, Little, Nicklow, Drucis, Kelley, Varner, Holmes, and John Doe Security Captain were personally involved in any asserted deprivation of Plaintiff's constitutional rights.  Initially, the Court observes that Plaintiff's amended complaint generally sets forth broad and conclusory allegations of wrongdoing against these Defendants.  See, e.g., (Doc. No. 34 at 5 (concerning Defendants Wetzel and Little); id. at 6 (concerning Defendants Nicklow, Drucis, Kelley, and Varner); id. at 7 (concerning Defendant Varner); id. at 9 (concerning Defendants Wetzel, Little, Varner, and Holmes); id. at 19–20 (concerning Defendants Wetzel, Nicklow, Drucis, Kelley, and Varner)).  However, allegations which "are no more than conclusions, are not entitled to the assumption of truth."  See Santiago, 629 F.3d at 130 (citation and internal quotation marks omitted).  Thus, while the federal pleading standard under Rule 8 "does not require detailed factual allegations, . .

. it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." See Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

In addition, the Court observes that Plaintiff's amended complaint generally seeks to impose Section 1983 liability against these individuals based upon their supervisory roles within the DOC and/or their contact with Plaintiff after the complained-of-events occurred. See, e.g., (Doc. No. 34 at 2 and 3 (identifying the supervisory roles of Defendants Wetzel, Little, Nicklow, Drucis, Holmes, Varner, and John Doe Security Captain); id. at 17 (speaking with Defendants Drucis and Nicklow after the July 17, 2019 investigate cell search occurred)). However, a prisoner cannot maintain constitutional claims against prison defendants based solely upon a respondeat superior theory of liability or based solely upon allegations that prison defendants failed to adequately investigate or act favorably upon the prisoner's contact, correspondence, or administrative remedy complaining of events that have already occurred. See, e.g., Dooley, 957 F.3d at 374 (stating that "[p]ersonal involvement requires particular allegations of personal direction or of actual knowledge and acquiescence" and that, in pursuing any Section 1983 claim, a plaintiff may not rely on respondeat superior liability (citation and internal quotation marks omitted)); Mack v. Warden Loretto FCI, 839 F.3d 286, 295 (3d Cir. 2016) (affirming the district court's decision to dismiss the prisoner-plaintiff's claims against the warden and the deputy warden because the "complaint makes it clear that [plaintiff] only spoke to these defendants after the alleged" conduct of their subordinate had occurred and, thus, the complaint provided no basis to infer that those supervisory defendants were personally involved in the asserted constitutional violation).

All that said, the Court recognizes that, liberally construed, Plaintiff's amended complaint may be attempting to claim that, throughout his various civil actions (i.e., James v. Suers, James

v. Varano, James v. Wetzel, and the instant action), Plaintiff has spoken with and/or written to numerous individuals within the DOC concerning the various conditions of his confinement in the DOC. See (Doc. No. 34 at 5–8). To the extent that Plaintiff suggests that, because he continually complained about his various conditions of confinement, Defendants were aware of an ongoing wrongdoing, see (id.), the Court finds that Plaintiff's amended complaint has not alleged a single action or inaction that was ongoing and, instead, has complained only of various incidents and events that have, allegedly, occurred over the course of years at numerous DOC institutions located in both this District and the Western District. While Plaintiff may continually assert constitutional claims against DOC defendants, such as retaliation and deliberate indifference, it cannot be said—based upon the allegations in his amended complaint—that Defendants Wetzel, Little, Nicklow, Drucis, Kelley, Varner, Holmes, or John Doe Security Captain were placed on notice of any particular continued wrongdoing or pattern of wrongdoing such that they had contemporaneous knowledge of that wrongdoing and acquiesced in it.

Moreover, the crux of Plaintiff's amended complaint is the July 17, 2019 investigative cell search and attendant strip searches and confiscation of his documentation. However, Plaintiff's amended complaint alleges no other instances of cell searches, strip searches, or document confiscation. Thus, there are no well-pleaded facts upon which the Court could conclude that there was a continued wrongdoing or pattern of wrongdoing. Cf. Diaz v. Palakovich, 448 F. App'x 211, 215 (3d Cir. 2011) (unpublished) (vacating district court's grant of summary judgment where the district court had failed to consider grievances pertaining to a practice of ongoing wrongful conduct, and explaining that a reasonable factfinder could find that (a) the defendants had knowledge of such wrongful conduct through the prisoner's grievances

and (b) had acquiesced in such conduct by failing to address the ongoing practice of wrongful conduct).

At most, Plaintiff's amended complaint alleges that, in the days following the July 17, 2019 investigative cell search, he personally spoke with Defendants Nicklow and Drucis who would not document (i.e., videotape) the condition of his cell and/or return his confiscated documentation to him. (Doc. No. 34 at 17.) The Court finds, however, that these allegations do not plausibly raise the inference that these Defendants—a Deputy Superintendent and a Security Lieutenant at SCI Coal Township—either maintained a policy, practice, or custom that directly caused Plaintiff's alleged constitutional harm or that they participated in violating Plaintiff's federally protected rights on July 17, 2019, directed their subordinates to violate those rights or, as supervisors, had contemporaneous knowledge of and acquiesced in their subordinates' alleged violations of Plaintiff's rights. See Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016). Rather, Plaintiff's allegations suggest that the earliest point in time in which Defendants Nicklow and Drucis became aware of the alleged constitutional harm was only after it occurred. And, to reiterate, Plaintiff's conclusory allegations concerning their supervisory roles at SCI Coal Township are not entitled to the assumption of truth. See, e.g., (Doc. No. 34 at 17 (alleging, without supporting facts, that the "retaliatory search" by Defendants John Doe 1, 2, 3, and 4 was "either authorized pursuant to policy" or Defendants "failed to supervise and insure [sic] their subordinates [sic] compliance . . . "); Twombly, 550 U.S. at 555 (explaining that, in ruling on a motion to dismiss, a court is not required to accept as true legal conclusions that are framed as factual allegations (citation omitted)).[2]

---

[2] In any event, the Court notes that the intentional deprivation of property by state officials does not give rise to a cognizable due process claim if the plaintiff has an adequate post-deprivation remedy available under state law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (providing

And, finally, to the extent that Plaintiff's amended complaint seeks to assert that a conspiracy existed between Defendants Nicklow, Drucis, and the four (4) John Doe Corrections Officers to conduct the July 17, 2019 investigative cell search and confiscate Plaintiff's documentation (Doc. No. 34 at 21), the Court finds that there are no well-pleaded facts in his amended complaint to support such an assertion. See, e.g., Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020) (explaining that, in order to prevail on a conspiracy claim under Section 1983, a plaintiff must allege that persons acting under color of state law "took concerted action based on an agreement to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights" (citation and internal quotation marks omitted)); Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 205 (3d Cir. 2008) (stating that, "[t]o constitute a conspiracy, there must be a meeting of the minds" (citation and internal quotation marks omitted)).

---

that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available"); Allen v. Cooper, 140 S. Ct. 994, 1004 (2020) (explaining that a deprivation of property "must be intentional, or at least reckless, to come within the reach of the Due Process Clause[,]" and that "[a] State cannot violate that Clause unless it fails to offer an adequate remedy for [a deprivation], because such a remedy itself satisfies the demand of 'due process'" (citation and internal citation omitted)). With respect to post-deprivation remedies in the prisoner context, the Third Circuit has held that the DOC's grievance system constitutes an adequate post-deprivation remedy. See, e.g., Monroe v. Beard, 536 F.3d 198, 209–10 (3d Cir. 2008) (finding that prison official-defendants who had confiscated legal materials belonging to the prisoner-plaintiffs did not violate the Due Process Clause, in part, because the DOC's grievance procedure provided an adequate post-deprivation remedy); Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000) (finding that the prisoner-plaintiff had an adequate post-deprivation remedy in the county correctional facility's grievance program, thereby satisfying due process). And, here, Plaintiff acknowledges that he "filled out" an inmate grievance the "night" of July 17, 2019, the date on which the investigative cell search allegedly occurred.  (Doc. No. 34 at 17.)

Accordingly, for all of these reasons, the Court concludes that Plaintiff's Section 1983 claims against Defendants Wetzel, Little, Nicklow, Drucis, Kelley, Varner, Holmes, and John Doe Security Captain are subject to dismissal for Plaintiff's failure to allege their personal involvement in the asserted constitutional violations.  Because Plaintiff has failed to allege such personal involvement, the Court also concludes that, with respect to these Defendants, his pleading fails to comply with Rule 8 of the Federal Rules of Civil Procedure.

### 2.    Rule 8 of the Federal Rules of Civil Procedure

Rule 8 governs the general rules of pleading, and it requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  See Fed. R. Civ. P. 8(a)(2).  This short and plain statement must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest.  See Erickson, 551 U.S. at 93.  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief[; it] has to show such an entitlement with its facts."  Fowler, 578 F.3d at 211 (citation and internal quotation marks omitted).  Under the pleading standard of Rule 8, "[t]he Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible."  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

Here, although Plaintiff's amended complaint names Wetzel, Little, Nicklow, Drucis, Kelley, Varner, Holmes, and John Doe Security Captain as Defendants, it does not set forth the harm that each individual allegedly caused him or when, where, and how each individual's action or inaction caused him such harm.  Rather, as set forth above, Plaintiff's allegations against these Defendants are generally conclusory and based upon their supervisory roles within the DOC and/or their contact with Plaintiff after the complained-of-events occurred.  Thus, because Plaintiff's amended complaint does not provide fair notice of the grounds upon which

his claims against these Defendants rest, the Court concludes that his claims—both under Section 1983 and the Pennsylvania Constitution, if any—are subject to dismissal for failure to satisfy Rule 8 of the Federal Rules of Civil Procedure.  See Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) (stating that, "[n]aturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8" (citations and internal quotation marks omitted)); Evancho, 423 F.3d at 353 (explaining that, under Rule 8, "a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible" (citation omitted)); Hill v. Thomas, No. 3:13-cv-00174, 2016 WL 1245552, at *3–4 (M.D. Pa. Mar. 23, 2016) (concluding that the plaintiff's amended complaint failed to satisfy the requirements of Rule 8 where there were no details concerning dates, times, places, or individuals involved).

### 3.    Failure to State a Claim

As set forth above, Plaintiff's amended complaint alleges violations of his constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments pursuant to Section 1983. See (Doc. No. 34 at 19–31).  In their motion to dismiss and supporting brief, Defendants McGinley, Tripp, and Noel assert that Plaintiff's amended complaint fails to state a claim against them for such constitutional violations.  (Doc. Nos. 40; 41 at 9–13.)  In support of this assertion, Defendants address each of Plaintiff's claims in turn.  The Court will do the same.

### a.    First Amendment Claim

In his amended complaint, Plaintiff asserts that he suffered retaliation at the hands of Defendants McGinley, Tripp, and Noel for engaging in conduct protected by the First Amendment.  (Doc. No. 34 at 19, 21.)  In support, Plaintiff generally alleges that he was retaliated against for filing James v. Varano against numerous DOC corrections staff, including

Defendant Tripp (id. at 5), and for filing grievances (id. at 6, 8–9, 19).  Although Plaintiff's amended complaint fails to identify specific dates and times, he claims that Defendants Tripp, McGinley, and Noel engaged in the following conduct: Defendants McGinley and Tripp denied him a phone call despite having complied with the phone call "sign-up procedures" (id. at 7–8); Defendants McGinley and Tripp "provided direction to their subordinates" to conduct an investigate cell search (id. at 20), to confiscate and destroy his legal documentation (id. at 21), and to violate his right to access the courts and "program eligibility" (id. at 6–7); Defendants McGinley and Tripp "conspired" and issued a false retaliatory misconduct via Defendant Belles (id. at 8); Defendants McGinley and Tripp falsified unidentified official records and/or destroyed unidentified evidence that he requested to be preserved (id. at 20); and Defendant Noel "repeatedly denied" him access to the law library (id. at 11).

In order for Plaintiff to state a First Amendment retaliation claim against Defendants McGinley, Tripp, and Noel, he must satisfy the following three (3) elements: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him."  See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted).  However, even if Plaintiff states a prima facie case of retaliation, "prison officials may still prevail if they establish that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  See id. (footnote, citation, and internal quotation marks omitted).

As to the first element, the filing of lawsuits and prison grievances constitute activity protected by the First Amendment.  See id. at 422 (stating that a prisoner-plaintiff engages in constitutionally protected activity when he files a grievance against a prison official (citing

Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003))); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (reiterating its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); Allah v. Seiverling, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).  Here, the moving Defendants do not dispute that Plaintiff engaged in constitutionally protected activity for purposes of his prima facie case.  (Doc. No. 41 at 10.)

Regarding the second element, an adverse action is one that is "sufficient to deter the exercise of First Amendment rights[.]"  See Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017); Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015), (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights . . . " (citation omitted)).  Here, the Court agrees with the moving Defendants (Doc. No. 41 at 11) that, with respect to at least one of the alleged actions, i.e., that Plaintiff was denied a phone call on a single occasion, such action is "simply too de minimis to constitute adverse action."  See Christian v. Garman, No. 1:20-cv-01842, 2021 WL 1017251, at *4 (M.D. Pa. Mar. 17, 2021) (citation omitted); see also McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than de minimis" (citations and internal quotation marks omitted)).  However, with respect to Plaintiff's other alleged adverse actions, such as the search of his cell and confiscation of legal documentation, denial of program eligibility, denial of law library time, and the issuance of a false retaliatory misconduct via a conspiracy with

Defendant Belles, the Court finds that Plaintiff's amended complaint has sufficiently stated adverse actions for purposes of his prima facie case.  Certainly, each of these actions could deter an inmate of ordinary firmness from his exercising his constitutional rights.

Finally, with respect to the third element, a plaintiff must allege that the constitutionally protected activity he engaged in was "'a substantial or motivating factor'" for the adverse action that he allegedly suffered.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)).  Because "motivation is almost never subject to proof by direct evidence," a prisoner-plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive."  See Watson, 834 F.3d at 422.  The prisoner-plaintiff "can satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."  See id. (footnote omitted).

Here, even if Plaintiff's amended complaint sufficiently alleges that he engaged in constitutionally protected activity and that he suffered adverse actions, his amended complaint fails to plausibly allege a causal link to satisfy the third element of his prima facie case.  In particular, the Court finds that Plaintiff's amended complaint generally provides no dates or timeframes for the alleged adverse actions such that the Court could infer "an unusually suggestive temporal proximity" between James v. Varano or any grievances he filed and each of the alleged adverse actions.  In addition, the Court finds that, because Plaintiff's amended complaint fails to provide such dates or timeframes, the Court cannot assess whether any "pattern of antagonism coupled with timing" exists between his prior lawsuit or any grievances he filed and each of the alleged adverse actions.

The only date that Plaintiff's amended complaint identifies with respect to the alleged adverse actions is the July 17, 2019 investigative cell search.  (Doc. No. 34 at 8, 10.)  However, James v. Varano was commenced in this Court in October of 2014, nearly five (5) years earlier.  See James v. Varano, No. 1:14-cv-01951 (M.D. Pa. Oct. 8, 2014), ECF No. 1 at 57.  Thus, it cannot be said that there is "an unusually suggestive temporal proximity" between Plaintiff's prior lawsuit and the July 17, 2019 investigative cell search.  See Watson, 834 F.3d at 422.  Further, Plaintiff's allegations concerning any grievances he filed are broad and conclusory; they do not provide any information about the grievances, such as the subject of those grievances, when they were filed, or against whom they were filed.  Thus, because Plaintiff's allegations have failed to provide such information, it is unclear whether these grievances named Defendants McGinley, Tripp, or Noel or pertained to these Defendants in any way, such that a retaliatory motive could be inferred as a result of Plaintiff filing such grievances.

Accordingly, for all of these reasons, the Court concludes that Plaintiff's amended complaint fails to state a First Amendment retaliation claim against Defendants McGinley, Tripp, and Noel.  The Court will, therefore, grant Defendants' motion on this basis and dismiss Plaintiff's First Amendment retaliation claim against these Defendants.[3]  In addition, the Court will likewise dismiss Plaintiff's First Amendment retaliation claim against Defendant Bauer, which is premised on the same allegations as Plaintiff's First Amendment retaliation claim against Defendant Noel.  (Doc. No. 34 at 10–11 (alleging that, on unspecified dates and times,

---

[3]  To the extent that Plaintiff's amended complaint seeks to assert a retaliation claim under Article I, Section 7 of the Pennsylvania Constitution, see (Doc. No. 34 at 19, ¶ 70), the Court notes that Plaintiff's claim fails for the same reasons discussed above.  See generally Com. Bureau of Prof'l and Occupational Affairs v. State Bd. of Physical Therapy, 728 A.2d 340, 343 (1999) (providing that "[t]he free speech analysis under the Federal Constitution also applies to the free speech claim under the Pennsylvania Constitution").

Defendants Bauer and Noel "repeatedly denied" Plaintiff access to the institution's law library).)[4]

### b.    Fourth Amendment Claim

In his amended complaint, Plaintiff appears to invoke the Fourth Amendment against Defendants McGinley, Tripp, and Noel in order to challenge the investigative search of his cell and the confiscation of his legal documentation.  (Doc. No. 34 at 19–20.)  The moving Defendants seek dismissal of this claim on the basis that Plaintiff's amended complaint fails to state a Fourth Amendment claim upon which relief can be granted.  (Doc. No. 41 at 12–13.)  The Court agrees.

"[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights."  Hudson v. Palmer, 468 U.S. 517, 524 (1984) (citation omitted).  As explained by the United States Supreme Court, "[t]hese constraints on inmates, and in some cases the complete withdrawal of certain rights, are justified by the considerations underlying our penal system."  See id. at 524 (citations and internal quotation marks omitted).  Indeed, "[t]he curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of institutional needs and objectives of prison facilities, . . . chief among which is internal security[.]"  See id. (citation and internal citation and quotation marks omitted).

---

[4]  The Court notes that counsel for the moving Defendants does not represent Defendant Bauer, and the waiver of service for Defendant Bauer was returned unexecuted on May 22, 2023.  (Doc. No. 39.)  As mentioned above, the Court has a continuing statutory obligation to conduct a review of pro se complaints brought by plaintiffs granted leave to proceed in forma pauperis. See 28 U.S.C. § 1915(e)(2)(B).

Thus, while the Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures[,]" see U.S. Const. amend. IV, the United States Supreme Court has ruled that inmates, because of their status, do not enjoy protection against unreasonable searches and seizures in their cell.  See Hudson, 468 U.S. at 526–28 and 527 n.8; accord Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001) (stating that "[t]he Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration" and that, therefore, "the Fourth Amendment has no applicability to a prison cell").

As a result, the Court concludes that Plaintiff's amended complaint fails to state a Fourth Amendment claim to the extent that it is based upon the search of his cell and the confiscation of legal documentation from his cell.  The Court will, therefore, grant the moving Defendants' motion on this basis and dismiss Plaintiff's Fourth Amendment claim against not only Defendants McGinley, Tripp, and Noel, but also the four (4) John Doe Corrections Officers who conducted the search and confiscated Plaintiff's documentation.  Plaintiff will, however, be permitted to proceed on a Fourth Amendment strip search claim against the four (4) John Doe Corrections Officers.

### c.      Eighth Amendment Claim

In his amended complaint, Plaintiff asserts that Defendants McGinley, Tripp, and Noel subjected him to cruel and unusual punishment and were deliberately indifferent to his inhumane conditions of confinement.  (Doc. No. 34 at 9, 20, 21.)  In support, Plaintiff generally alleges that he was retaliated against for filing James v. Varano against numerous DOC corrections staff, including Defendant Tripp (id. at 5), and for filing grievances (id. at 6, 8–9, 19).  Defendants McGinley, Tripp, and Noel argue that when Plaintiff's claims, as mentioned above, are analyzed

under the Eighth Amendment, they fail as a matter of law.  (Doc. No. 41 at 11–12.)  The Court

agrees.

        "The Eighth Amendment, which applies to the States through the Due Process Clause of

the Fourteenth Amendment, . . .  prohibits the infliction of 'cruel and unusual punishments' on

those convicted of crimes."  Wilson v. Seiter, 501 U.S. 294, 296–97 (1991) (internal citation

omitted)).  However, the United States Constitution "does not mandate comfortable prisons, and

only those deprivations denying the minimal civilized measure of life's necessities, are

sufficiently grave to form the basis of an Eighth Amendment violation."  See id., 501 U.S. at 298

(internal citations and quotation marks omitted).

        Thus, in order "[t]o determine whether prison officials have violated the Eighth

Amendment, [courts] apply a two-prong test[.]"  See Porter v. Pennsylvania Dep't of Corr., 974

F.3d 431, 441 (3d Cir. 2020) (citation omitted).  Under the first prong, courts consider whether

the deprivation was "'objectively, sufficiently serious[,]'" that is, whether "'a prison official's

act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[.]'"

See id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  And, under the second prong,

courts must consider whether the prison official was "'deliberate[ly] indifferen[t] to inmate

health or safety.'"  See id. (quoting Farmer, 511 U.S. at 834).

        Regarding the first prong, life's necessities include food, clothing, shelter, medical care,

and reasonable safety.  See Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 418 (3d Cir.

2000) (stating that "when the government takes a person into custody against his or her will, it

assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical

care, and reasonable safety" (citing DeShaney v. Winnebago Co. Dep't of Social Svcs., 489 U.S.

189, 199–200 (1989))); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010)

(explaining that the Eighth Amendment imposes a duty upon prison officials "to ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to ensure that prison officials] take reasonable measures to guarantee the safety of the inmates" (citations and internal quotation marks omitted)).

Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See Farmer, 511 U.S. at 837. "The knowledge element of deliberate indifference is subjective, . . . meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837–38).

Here, Plaintiff's allegations against Defendants Tripp, McGinley, and Noel generally concern a phone call, law library time, an investigative cell search, confiscation of legal documentation, denial of access to the courts and program eligibility, a retaliatory misconduct, falsified records and/or destroyed evidence. However, the Court finds that not a single one of those alleged conditions, whether alone or in combination, are so sufficiently serious as to form the basis of an Eighth Amendment claim. This is because the alleged conditions do not implicate Plaintiff's basic human needs, such as food, clothing, shelter, health, or safety. Cf. Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (recognizing that a prisoner's conditions of confinement can constitute cruel and unusual punishment where the conditions result in an "unquestioned and serious deprivation of basic human needs" or the deprivation of "the minimal civilized measure of life's necessities").

27

Accordingly, the Court concludes that Plaintiff's amended complaint has not plausibly alleged the objective component of his Eighth Amendment claim against Defendants McGinley, Tripp, and Noel.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (explaining that only "extreme deprivations . . . make out a conditions-of-confinement claim").  As a result, the moving Defendants' motion will be granted on this basis, and Plaintiff's Eighth Amendment claim will be dismissed against these Defendants.[5]

### d.    Fourteenth Amendment Claim

In his amended complaint, Plaintiff alleges that the DOC "grievance system is inadequate and fails to provide for adequate state and[/]or federal due process substantive and procedural under . . . the [F]ourteenth [A]mendment[.]"  (Doc. No. 34 at 6.)  Defendants argue that, to the extent that Plaintiff's amended complaint asserts a Fourteenth Amendment claim against Defendants McGinley, Tripp, and Noel, it should be dismissed for failure to state a claim.  See (Doc. No. 41 at 12–13).  The Court agrees.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"  See U.S. Const. amend. XIV, § 1. "The core concept of due process is protection against arbitrary government action" and, as that core concept has developed over time, "it has come to have both substantive and procedural components."  Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 658 (3d Cir. 2011) (citation and internal

---

[5]  To the extent that Plaintiff's amended complaint seeks to assert a cruel and unusual punishment claim under Article I, Section 13 of the Pennsylvania Constitution against these Defendants, see (Doc. No. 34 at 20–21, ¶ 75), the Court notes that it need not conduct a separate analysis because such a claim fails for the same reasons discussed above.  See Commonwealth v. Bonner, 135 A.3d 592, 597 n.18 (Pa. Super. 2016) (stating that "[t]he Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendment of the United States Constitution" (quoting Commonwealth v. Yasipour, 957 A.2d 734, 743 (Pa. Super. Ct. 2008), appeal denied, 980 A.2d 111 (2009)).

citation omitted).  The procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property[,]" see id. at 662, and the substantive component "limits what government may do regardless of the fairness of procedures that it employs[.]"  See Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) (citation omitted).

To state either a procedural or substantive due process claim, a plaintiff must establish, as a threshold matter, that he was deprived of an individual interest that is encompassed by the Fourteenth Amendment's protection of life, liberty, and property.  See McCurdy v. Dodd, 352 F.3d 820, 825–26 (3d Cir. 2003) (explaining that, in Section 1983 actions, courts must address the threshold issue of whether the alleged due process right implicates a constitutional right at all); Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006) (stating that, in order for a plaintiff to plausibly state a claim under Section 1983 for the "deprivation of procedural due process rights, the plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law" (citation and internal quotation marks omitted)); Skiles v. City of Reading, 449 F. App'x 153, 157 (3d Cir. 2011) (unpublished) (providing that, in order for a plaintiff to plausibly state a claim under Section 1983 for the deprivation of substantive due process rights, the plaintiff must allege that (1) "he has a protected constitutional interest at issue" and (2) government employees engaged in conduct that "shocks the conscience[,]" which is a standard that seeks to protect an individual from "arbitrary action of government" (citation and internal citations and internal quotation marks omitted)).

Here, Plaintiff's amended complaint appears to assert that he has a protected liberty

interest in his right to the grievance process at SCI Coal Township.  (Doc. No. 34 at 6.)  As a general rule, however, prisoners do not have a constitutional right to prison grievance procedures.  See, e.g., Glenn v. DelBalso, 599 F. App'x 457, 459 (3d Cir. 2015) (unpublished) (explaining that "[a]ccess to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [Section] 1983" (citation omitted)); Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013) (unpublished) (explaining that prisoners do not "have a liberty interest protected by the [D]ue [P]rocess [C]lause in the grievance procedures" (citation omitted)); Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (unpublished) (affirming the district court's conclusion that the "defendants' alleged obstruction of prison grievance procedures does not give rise to an independent claim[,]" and explaining that "[p]risoners do not have a constitutional right to prison grievance procedures" (citation omitted)).

Thus, even if a grievance process is offered to Plaintiff by the DOC, and even if Plaintiff avails himself of that process, which Plaintiff alleges he has done here, the alleged improprieties concerning that process do not give rise to a constitutional claim under Section 1983. Accordingly, the Court concludes that Plaintiff's Fourteenth Amendment due process claim fails as a matter of law.  The Court will, therefore, grant the moving Defendants' motion on this basis and dismiss Plaintiff's Fourteenth Amendment claim against Defendants McGinley, Tripp, and Noel.

### e.     Plaintiff's Requests for Relief

Plaintiff sets forth numerous requests for relief in his amended complaint.  (Doc. No. 34 at 22–32.)  Defendants argue that some of these requests for relief should be stricken from his pleading.  (Doc. No. 41 at 14–16.)  The Court addresses each of Defendants' arguments in turn.

### i.     Compensatory Damages

Initially, the moving Defendants argue that Plaintiff should not be permitted to make a request for compensatory damages because he has not alleged any physical injury in his amended complaint.  (Doc. No. 41 at 14.)  The Court agrees.  The Prison Litigation Reform Act[6] provides, in pertinent part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  See 42 U.S.C. § 1997e(e).  The Third Circuit has explained that this requires more than a de minimis physical injury in order for a prisoner to recover for mental or emotional injury.  See Mitchell, 318 F.3d at 536; Zayas-Cintron v. Hicks, No. 23-cv-01081, 2024 WL 345489, at *5 (M.D. Pa. Jan. 30, 2024) (stating that "[m]ore than a de minimis physical injury must be alleged as a predicate to allegations of mental or emotional injury" (citing Mitchell, 318 F.3d at 536)).

At most, Plaintiff's amended complaint alleges that he was handcuffed in a bathroom and not provided his inhaler.  (Doc. No. 34 at 16.)  In support of this allegation, Plaintiff asserts that: the handcuffs were applied excessively tightly; the bathroom was hot, had no vents, and smelled like urine; and he informed Defendants Danaoply and Greene that he needed his inhaler and had

---

[6]  See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

to go to the bathroom.  (Id.)  However, Plaintiff's amended complaint does not assert that either during or after this incident he suffered <u>any</u> physical injury.  While the Court recognizes that a severe asthma attack could be life-threatening and, thus, constitute more than a <u>de</u> <u>minimis</u> physical injury, <u>see, e.g.</u>, <u>Perez v. United States</u>, 330 F. App'x 388, 390 (3d Cir. 2009) (unpublished), Plaintiff's amended complaint does not allege that he had any difficulty breathing much less that he suffered an asthma attack, a severe asthma attack, or any other resulting physical injury.

Accordingly, the Court concludes that, because Plaintiff's amended complaint does not allege more than a <u>de</u> <u>minimis</u> injury, he is not entitled to compensatory damages.  <u>See</u> 42 U.S.C. § 1997e(e) (requiring a showing of physical injury); <u>Mitchell</u>, 318 F.3d at 533–36 (concluding that Section 1997e(e) requires more than a <u>de</u> <u>minimis</u> physical injury before a mental or emotional injury is compensable).

### ii.   Damages Under the Pennsylvania Constitution and Specific Requests for Injunctive Relief

Next, the moving Defendants argue that there is no private right of action for monetary damages based upon alleged violations of the Pennsylvania Constitution.  (Doc. No. 41 at 14.) The Court agrees.  "The prevailing view is that Pennsylvania does not recognize a private right of action for damages in a suit alleging violation[s] of the Pennsylvania Constitution."  <u>Gary v. Braddock Cemetery</u>, 517 F.3d 195, 207 n.4 (3d Cir. 2008); <u>see also</u> <u>Plouffe v. Cevallos</u>, 777 F. App'x 594, 601 (3d Cir. 2019) (unpublished) (providing that there is no "private right of action for damages under the Pennsylvania Constitution"); <u>Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.</u>, 442 F. App'x 681, 687 (3d Cir. 2011) (unpublished) (stating that "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution" (citation omitted)); <u>Jones v. City of</u>

<u>Philadelphia</u>, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) (stating that, "[t]o date, neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution" (citations omitted)).  Accordingly, Plaintiff's claims for damages based upon alleged violations of the Pennsylvania Constitution fail as a matter of law because Pennsylvania has not authorized an award of damages for such alleged violations of its Constitution.

However, while Plaintiff is precluded from recovering damages under the Pennsylvania Constitution, "equitable remedies are available."  See <u>Pocono Mountain Charter Sch.</u>, 442 F. App'x at 688 (stating that, "[a]lthough monetary relief is barred for claims under the Pennsylvania Constitution, equitable remedies are available" (citation omitted)); <u>Jones,</u> 890 A.2d at 1216 (explaining that "[o]ther remedies, such as declaratory or prospective injunctive relief, could provide a remedy" under the Pennsylvania Constitution).

Although Defendants concede this point (Doc. No. 41 at 14), they argue that in prison condition cases, federal courts are not permitted to grant or approve any prospective injunctive relief that is more than necessary to correct the violation of a federal right (<u>id.</u> at 14–15).  In support, they cite to 18 U.S.C. § 3626, which provides for the "[a]ppropriate remedies with respect to prison conditions."  <u>See</u> 18 U.S.C. § 3626.  In pertinent part, subsection (a)(1)(a) of this statute provides as follows:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

<u>See</u> 18 U.S.C. § 3626(a)(1)(A).  Prospective relief refers to "all relief other than compensatory money damages[.]"  <u>See</u> 18 U.S.C. § 3626(g)(7).

The moving Defendants argue that, with respect to two (2) of Plaintiff's requests for injunctive relief, Plaintiff's requests are not appropriately tailored for the needs of this case. (Doc. No. 41 at 15.)  In support, they point to the following two (2) requests: (1) the United States Marshals collecting "documentation under seal" in Defendants' possession; and (2) the Court "enjoin[ing] Defendants Little and their agents[.]"  (Doc. No. 34 at 31.)  The Court agrees with Defendants, as these requests are not only broad, vague, and unspecified, but they do not provide a basis upon which the Court could conclude that such relief is necessary to protect Plaintiff's constitutional rights.  In other words, it cannot be said that Plaintiff's requests for relief are "narrowly drawn" to correct an alleged violation of his federal rights.  <u>See</u> 18 U.S.C. § 3626(a)(1)(A).  Accordingly, these two (2) requests for prospective injunctive relief will be stricken.

### iii.     Americans with Disabilities Act and Equal Protection

Next, the moving Defendants argue that Plaintiff's amended complaint has not asserted a claim pursuant to the Americans with Disability Act ("ADA") or a claim pursuant to an equal protection theory, such that Plaintiff could be afforded the following relief he seeks in his amended complaint (Doc. No. 41 at 41): (1) for the Court to "certify [him] as a class of one;" and (2) for "the Court [to] apply the relief [he] is entitled [to] as a mental health inmate under the ADA" (Doc. No. 34 at 31–32).  The Court agrees.  Plaintiff's amended complaint has neither expressly set forth an ADA claim or an equal protection claim nor pleaded any facts in support of such claims.  As a result, the Court finds that Plaintiff's amended complaint has not set forth a short and plain statement showing that he is entitled to any relief with respect to such claims.

See Fed. R. Civ. P. 8(a)(2); Bah v. United States, 91 F.4th 116, 119 (3d Cir. 2024) (explaining that, "[t]o state a viable claim, a plaintiff must offer a short and plain statement showing that he is entitled to relief, including allegations plausibly suggesting (not merely consistent with) such entitlement" (citation and internal quotation marks omitted)).  Accordingly, the moving Defendants' motion will be granted on this basis, and Plaintiff's requests for relief, concerning a class of one certification and his status as a mental health inmate, will be stricken from his amended complaint.

### iv.    Habeas Corpus

The moving Defendants argue that Plaintiff's request for habeas corpus relief should be stricken from his amended complaint.  (Doc. No. 41 at 16.)  The Court agrees.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). "Conversely, when the challenge is to a condition of confinement such that a finding in [the] plaintiff's favor would not alter his sentence or undo his conviction, an action under [Section] 1983 is appropriate."  Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).

Here, to the extent that Plaintiff's amended complaint seeks to challenge the very fact or duration of his imprisonment within the DOC (Doc. No. 34 at 32), such a challenge "must be brought by way of a habeas corpus petition," see id., and not by way of a civil rights complaint. Accordingly, the moving Defendants' motion will be granted on this basis, and Plaintiff's request for habeas corpus relief will be stricken from his amended complaint.

### f.   Conclusions

As a result of the foregoing, the following individuals will be terminated as Defendants from the caption of this case: Wetzel; Little; Nicklow; Drucis; Kelley; Varner; Holmes; McGinley; Tripp; Noel; Bauer; and John Doe Security Captain.  In addition, the following requests for relief will be stricken from Plaintiff's amended complaint: compensatory damages (Doc. No. 34 at 32, ¶ 200); damages under the Pennsylvania Constitution, see (id. at 31, ¶ 193); relief under the Americans with Disabilities Act (id. at 31–32, ¶ 197); relief under an equal protection theory of liability (id. 31, ¶ 196); relief in habeas corpus (id. 32, ¶ 199); and the following two (2) requests for injunctive relief—the United States Marshals collecting "documentation under seal" in Defendants' possession (id. at 31, ¶ 194), and the Court "enjoin[ing] Defendants Little and their agents" (id. at 31, ¶ 195).  And, finally, Plaintiff will be permitted to proceed on the following claims: (1) a First Amendment retaliation claim against Defendant Belles based upon the alleged issuance of a "false retaliatory misconduct" (id. at 8, ¶ 36); (2) a Fourth Amendment claim against the four (4) John Doe Corrections Officers based upon allegations that they conducted two (2) strip searches of Plaintiff (id. at 21, ¶ 77); (3) an Eighth Amendment cruel and unusual punishment claim against Defendants Danaoply and Greene based upon allegations that they denied his request for an inhaler and let him remain in a bathroom for nearly two (2) hours (id. at 22, ¶ 79); and (4) Plaintiff's claims under the Pennsylvania Constitution against Defendant Belles (id. at 20, ¶ 73 (citing to Article I, § 20)), Defendants John Doe officers 1, 2, 3, and 4 (id. at 21, ¶ 77 (citing to Article I, § 8)), and Defendants Danaoply and Greene (id. at 21–22, ¶ 79 (citing to Article I, § 13)).

### B.      Plaintiff's Motion for a Temporary Restraining Order

Plaintiff's motion for a temporary restraining order and supporting brief explains that, in August of 2023, he was transferred to State Correctional Institution Somerset ("SCI Somerset"), where he is currently incarcerated.  (Doc. No. 46 at 5.)  In connection with this transfer, Plaintiff appears to claim that unidentified "agents" of Defendants issued him a false retaliatory misconduct in response to his "continued refusal to discontinue complaining about the custom, practice, policy of interfering with [his] right to due process and seek redress of grievance[.]" (Id.); ); see also (id. at 6 (alleging, broadly, that "Defendants are aware of the misconduct of their agents and are actively engaged in the conspiracy to subject Plaintiff to inhumane conditions of confinement . . . ")).  In seeming support, Plaintiff asserts that "co-conspirators of Defendant Holmes, [i.e.,] L. Oliver, Nyberg, Mrs. Roscinski" claimed that Plaintiff had "no legal dead line [sic] when in fact he did."  (Id.)  Plaintiff further asserts that he was placed in the RHU for the false retaliatory misconduct and that, as a result, access to his "legal property" has been obstructed and access to "legal services" has been restricted.  (Id. at 7 (arguing that he does not have "any direct legal assistance[,]" is unable to "obtain legal copies[,]" has to "wait (7) days to possibly receive copies[,]" and is only able to "retain the amount of (1) one record box of legal documents and 30 day legal exchange").)

The moving Defendants argue that Plaintiff's allegations of harm at SCI Somerset are not a result of the asserted actions or inactions of any of the named Defendants in the instant lawsuit. (Doc. No. 48 at 3.)  In support, Defendants contend that the instant lawsuit concerns events occurring at SCI Coal Township, while Plaintiff's motion for a temporary restraining order seeks relief from events occurring at SCI Somerset.  (Id.)  In addition, Defendants contend that, while Plaintiff asserts various issues with legal resources at SCI Somerset and argues that he will suffer

harm from not being able to respond to their pending motion to dismiss, there is no reason to suggest that Plaintiff could not request an extension of time from the Court in which to do so. (Id. at 4.)  For all of these reasons, Defendants contend that the Court should deny Plaintiff's motion for a temporary restraining order.  (Id.)

Having reviewed Plaintiff's motion, the parties' arguments, and relevant authorities, the Court will not grant Plaintiff the extraordinary relief that he seeks.  The Court begins its discussion with the observation that "[t]he standard for analyzing a motion for a temporary restraining order is the same as that for a motion seeking a preliminary injunction."  See Freedland v. Mattingly, No. 1:20-cv-00081, 2020 WL 1984172, at *1 (M.D. Pa. Apr. 27, 2020) (citations omitted).  As a result, the Court will refer to Plaintiff's request for relief as preliminary injunctive relief.

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances."  Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citation and internal quotation marks omitted); Doe by & through Doe v. Boyertown Area Sch. Dist., 897 F.3d 518, 526 (3d Cir. 2018) (reiterating that "[p]reliminary injunctive relief is an extraordinary remedy" (citation and internal quotation marks omitted)).  In determining whether to grant such preliminary injunctive relief, the Court considers the following four factors: (1) the likelihood that the moving party will prevail on the merits at a final hearing; (2) the extent to which the moving party is being irreparably harmed by the complained-of-conduct; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest.  See Ramsay v. Nat'l Bd. of Med. Examiners, 968 F.3d 251, 256 (3d Cir. 2020), cert. denied, 141 S. Ct. 1517 (2021).

38

"The first two factors are prerequisites for a movant to prevail." Holland v. Rosen, 895 F.3d 272, 286 (3d Cir. 2018) (citations omitted). Thus, "[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." See Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017). Ultimately, it is the moving party who bears the burden of demonstrating that these factors have been satisfied. See Holland, 895 F.3d at 285 (explaining that preliminary injunctive relief does not issue "'unless the movant, by a clear showing, carries the burden of persuasion'" (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam))).

Upon consideration of this standard, the Court finds that Plaintiff has not demonstrated that he is entitled to the preliminary injunctive relief that he requests in his motion. "'While '[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally,' an injunction should not issue when 'it deals with a matter lying wholly outside the issues in the suit.'" Pinson v. United States, No. 17-cv-00584, 2017 WL 5158628, at *6 (M.D. Pa. Nov. 7, 2017) (quoting De Beers Consolidated Mines v. United States, 325 U.S. 212, 220 (1945)); Adams v. Freedom Forge Corp., 204 F.3d 475, 489–90 (3d Cir. 2000) (finding that a preliminary injunction was not appropriate where the harm alleged in the request for preliminary injunctive relief was "insufficiently related to the complaint and [did] not deserve the benefits of protective measures that a preliminary injunction affords" (citations omitted)).

Here, while Plaintiff's amended complaint alleges violations of his constitutional rights based upon the allegedly unconstitutional conditions of his confinement at SCI Coal Township, none of those conditions pertain to SCI Somerset, the individuals who work there, or the specific

conditions of his confinement there, including his confinement in the RHU or his alleged

restriction and/or access to legal resources while confined there.  In other words, the complained-

of-conditions in Plaintiff's amended complaint do not pertain to the complained-of-conditions in

his instant motion seeking preliminary injunctive relief.  Consequently, the Court concludes that

the nature and scope of his request for injunctive relief is not sufficiently related to the

allegations in his amended complaint.

      Even assuming arguendo, however, that Plaintiff could show a sufficient relationship

between his amended complaint and the nature of the preliminary injunctive relief he seeks, the

Court concludes that he is not entitled to such relief because he has not established that he will

suffer irreparable harm in the absence of the Court granting him such preliminary relief.  While

Plaintiff asserts allegations concerning his access to legal resources at SCI Somerset, he has not

shown that there is a threat of immediate irreparable injury.  See Cont'l Grp., Inc. v. Amoco

Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980) (stating as follows: "[t]he requisite for

injunctive relief has been characterized as a clear showing of immediate irreparable injury or a

presently existing actual threat . . . " (citation and internal quotation marks omitted)).

      At most, Plaintiff alleges that he "has an impending deadline" in which he must file a

response to Defendants' motion to partially dismiss his amended complaint.  (Doc. No. 46 at 7.)

The Court notes, however, that Plaintiff was granted an extension of time to respond to

Defendants' motion to dismiss (Doc. Nos. 50, 52) and, further, that Plaintiff has since filed his

brief in opposition (Doc. No. 53).  The Court also notes that Plaintiff acknowledges that he has

been released from the RHU at SCI Somerset.  (Doc. No. 51 at 3 (explaining that he was released

on December 7, 2023).)  As a result, any alleged harm that could result from the Court-imposed

deadline to respond to Defendants' motion to dismiss, and any alleged harm that could result

from the alleged restrictions and/or access to legal resources while he was housed in the RHU, appear to be moot.  (Doc. No. 46 at 7 (alleging that his placement in the RHU limits his access to "legal property" and "legal services").)

Accordingly, for all of these reasons, the Court will deny Plaintiff's motion for a preliminary injunction.  (Doc. No. 46.)  Not only does Plaintiff's motion pertain to allegations and relief that are outside the scope of his amended complaint, but his motion falls well-short of demonstrating a reasonable likelihood that he will suffer irreparable harm, an element that is essential to the Court granting such extraordinary relief.  Because the Court will deny his motion for a preliminary injunction, the Court will also deny his "motion to show cause in response" to Defendants' brief in opposition to his motion for a preliminary injunction.  (Doc. No. 49.)

### C.      Plaintiff's Motion for the Appointment of Counsel

Finally, the Court addresses Plaintiff's motion seeking the appointment of counsel.  (Doc. No. 51.)  In support of his request, Plaintiff asserts that he is a "documented mental health inmate and requires and does take medication."  (Id. at 2.)  Plaintiff further asserts that his case "will require expert testimony" and that it involves "legal complexities[.]"  (Id.)  In addition, Plaintiff contends that he is "frequently provided inadequate time, space, and opportunity to conduct legal research."  (Id.)  Finally, Plaintiff claims that "[t]here is obstruction with [his] ability to obtain legal copies."  (Id.)  However, for the reasons discussed below, the Court will deny Plaintiff's motion seeking the appointment of counsel.

The Court begins its discussion with the basic principle that, although indigent civil litigants have no constitutional or statutory right to the appointment of counsel, district courts have broad discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1).  See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citations

41

omitted).  The Third Circuit has "outlined a two-step process" that district courts are to follow

when deciding whether to request appointed counsel to represent an indigent civil litigant.  See

Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).

First, as a threshold inquiry, the district court must consider whether the plaintiff's case

has "some arguable merit in fact and law."  See Montgomery, 294 F.3d at 498–99 (citations

omitted).  Second, if the district court determines that the plaintiff's case has such merit in fact

and law, then the district court is to consider other factors, including: (1) the plaintiff's ability to

present his own case; (2) the complexity of the legal issues; (3) the degree to which factual

investigation will be required and the plaintiff's ability to pursue such investigation; (4) the

extent to which the case is likely to turn on credibility determinations; (5) whether the case will

require testimony from expert witnesses; and (6) whether the plaintiff can attain and afford

counsel on his own behalf.  See Houser, 927 F.3d at 697 (citations omitted).

This list, however, "is not meant to be exhaustive."  See Tabron v. Grace, 6 F.3d 147, 157

(3d Cir. 1993); see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that

[these] factors are only a guidepost for district courts in their exercise of the broad statutory

discretion granted to them by Congress.  They are not exhaustive, nor are they each always

essential").  Rather, the district court must determine on a "case-by-case basis" whether a request

for appointed counsel is warranted.  See Tabron, 6 F.3d at 157-58 (citations omitted).

Having reviewed this matter, the Court concludes that a request for appointed counsel is

not warranted at this time.  Under the process outlined above, the Court must consider whether

Plaintiff's case has some arguable merit in fact and law and, if so, whether the pertinent factors

warrant the appointment of counsel.  Even if the Court were to assume that Plaintiff's case has

such merit, the Court would conclude that Plaintiff—an experienced pro se litigant—has the

42

apparent ability to read, write, and understand English, as well as the apparent ability to litigate numerous actions pro se, including the instant action, as demonstrated by the filing of his complaint, his amended complaint, his motion for preliminary injunctive relief, and his motion for the appointment of counsel.  (Doc. Nos. 1, 34, 46, 51.)   Although the Court acknowledges that Plaintiff may face difficulties in this litigation as he is proceeding as a pro se prisoner, the issues in his case are not too complex, will not turn exclusively on credibility determinations, and, further, expert testimony will likely not be required to resolve such issues.  Finally, with respect to Plaintiff's concerns regarding limited legal resources at his place of confinement (or any future places of confinement within the DOC), the Court notes that, if Plaintiff were to need future extensions of time to respond to filings and Orders in this matter, which would require a response from him, then he need only request an extension from the Court at the appropriate time.   Accordingly, for all of these reasons, the Court will deny Plaintiff's motion seeking the appointment of counsel.  In the event that future proceedings would otherwise demonstrate the need for counsel, the Court may reconsider this matter either <u>sua</u> <u>sponte</u> or upon a motion properly filed by Plaintiff.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the moving Defendants' motion to partially dismiss the amended complaint.  (Doc. No. 40.)  In addition, Court will deny Plaintiff's motion for a preliminary injunction, motion for a show cause order, and motion seeking the appointment of counsel.  (Doc. Nos. 46, 69, 51.)  An appropriate Order follows.

<u>s/ Yvette Kane</u>
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

43